UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITY OF HUNTINGTON, WEST VIRGINIA, </br></br>    Plaintiff, </br></br>    v. </br></br> U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, </br></br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )    Case No. 19-cv-741 (TSC) |

## **MEMORANDUM OPINION**

Plaintiff, City of Huntington, West Virginia, is a grantee in a federal program administered by Defendant, the Department of Housing and Urban Development ("HUD"). (ECF No. 1, Compl. ¶ 1.) In October 2017, HUD determined that Plaintiff committed statutory and regulatory violations and announced that as a result, it would decrease Plaintiff's access to grant funds (through a credit reduction) and require Plaintiff to pay back additional funds. (*Id.* ¶¶ 45–48.) Plaintiff sued under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, arguing that it was entitled to a hearing before HUD took these actions, and that HUD's failure to provide one was arbitrary and capricious. (*Id.* ¶¶ 54–67.) The parties have cross-moved for summary judgment. (ECF No. 15, Def. MSJ; ECF No. 16, Pl. MSJ.) Having reviewed the pleadings, the record before it, and the applicable law, the court will DENY Defendant's motion for summary judgment, DENY in part and GRANT in part Plaintiff's motion for summary judgment, and remand the matter for adequate administrative adjudication consistent with the court's findings.

1

## I. BACKGROUND

HUD provides Plaintiff funds through the HOME Investment Partnership Program (the "HOME Act"), which provides grants to States and local jurisdictions for eligible affordable housing plans. 42 U.S.C. § 12741 *et seq.*; 24 C.F.R. § 92.1. By letter dated July 24, 2017, Defendant notified Plaintiff of "findings of noncompliance" that "required corrective actions." (ECF No. 22-1, Joint App'x 2 at AR 199–204.)

The first noncompliance finding concerned the "commitment requirement," which requires HOME participants to place available funds "under binding commitment to affordable housing" within 24 months of receiving access to the funds. 42 U.S.C. § 12748(g). HUD found that Plaintiff failed to meet its "commitment requirement" in 2012 by $226,196 and in 2015 by $738,918. (Joint App'x 2 at AR 203.) It announced that it would decrease Plaintiff's HOME credit line by the total amount: $965,114. (*Id.*) The second finding concerned the alleged misuse of $408,814 in "ineligible and disallowed" expenditures, which HUD instructed Plaintiff to repay to its HOME account from nonfederal funds. (*Id.*)

Plaintiff contested both these findings and requested a hearing in three letters sent to HUD between September 2017 and August 2018. (*Id.* at AR 205–218; AR 219–221; AR 252–255.) In October 2018, HUD sent Plaintiff a letter announcing that its initial determinations were final. (ECF No. 22-4, Joint App'x 5 at AR 629–632.) The letter did not respond to any of Plaintiff's defenses against the actions, nor to its request for a hearing. (*Id.*)

## II. STANDARD

A. <u>Summary Judgment</u>

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Richards v. INS*, 554 F.2d 1173, 1177 &

n. 28 (D.C. Cir. 1977). If the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," it shall be set aside. 5 U.S.C. § 706(2)(A). Review under the arbitrary and capricious standard, however, is "highly deferential" and "presumes the agency's action to be valid." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir.1981); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983) ("[A] reviewing court may not set aside an agency [decision] that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute.") This does not, however, dispense with the requirements that the Board's action "be supported by reasoned decisionmaking," *Haselwander v. McHugh*, 774 F. 3d 990 (D.C. Cir. 2014), and respond to all of Plaintiff's non-frivolous arguments. *Frizelle v. Slater*, 111 F. 3d 172, 177 (D.C. Cir. 1997).

### III.   ANALYSIS

   A. <u>Credit Reduction</u>

HUD reduced Plaintiff's credit line by $965,114 for two alleged violations of the commitment requirement. First, HUD found that $226,196 of grant funds "expired" because Plaintiff had "committed funds" to an affordable housing project that lacked the requisite financial underwriting and guarantees, in violation of the Consolidated and Further Appropriations Act of 2012 and the pre-2013 definition of a valid HOME commitment in 24 C.F.R § 92.2. (Def. MSJ at 11; Joint App'x 1 at AR 203.) HUD also found that $738,918 in funds had "expired" because Plaintiff recorded a project commitment amount that exceeded its actual commitments by that amount. (*Id*.) In both instances, the allegation was not simply that Plaintiff failed to use the funds, but that it misused or failed to properly account for the funds.

   The HOME Act gives HUD two ways to reduce a grantee's credit line: one requires a hearing and one does not. Under 42 U.S.C. § 12753, if HUD determines that a grantee misused

funds, it must provide the grantee with a hearing before it reduces the credit line. 42 U.S.C. § 12753 ("the Secretary shall reduce the line of credit" only if "the Secretary finds after reasonable notice and opportunity for hearing that a [grantee] has failed to comply substantially with any provision of this part . . .") By contrast, under 42 U.S.C. § 12748(g), no hearing is required if HUD finds that a grantee left the funds unused for 24 months. 42 U.S.C. § 12748(g) (funds expire, without notice or a hearing, if they "are not placed under binding commitment to affordable housing within 24 months.") HUD argues that the credit reduction at issue falls under section 12748(g), and therefore did not require a hearing, while Plaintiff argues that the action falls under section 12753. (Def. MSJ at 19; Pl. MSJ at 28.)

HUD's position is plainly in conflict with the language of the statute. Section 12748(g) requires HUD to reallocate a specific unit of unspent funds; it does not contemplate the imposition of a penalty for the misuse of funds, as happened here. In order to impose a penalty, HUD was required to use the provision that governs misuse of funds, and to provide Plaintiff with a hearing. This conclusion is evident from the text of section 12748(g):

> If any funds becoming available to a participating jurisdiction under this subchapter are not placed under binding commitment to affordable housing within 24 months after the last day of the month in which *such funds* are deposited in the jurisdiction's HOME Investment Trust Fund, the jurisdiction's right to draw *such funds* from the HOME Investment Trust Fund shall expire. The Secretary shall reduce the line of credit in the participating jurisdiction's HOME Investment Trust Fund by the *expiring amount* and shall *reallocate* the funds by formula in accordance with [42 U.S.C. § 12747(d)].

42 U.S.C. § 12748(g) (emphasis added). The use of the phrases "such funds" and "expiring funds" indicates that the particular unused funds are the funds to be reallocated when they expire. HUD's action was inconsistent with this language because by removing funds years later, HUD did not eliminate Plaintiff's right to access the expiring funds, but rather eliminated its right to access funds that were subsequently made available. Such an action constitutes a penalty, not a

reallocation, a term which is itself instructive.  By directing HUD to "reallocate" funds that are not committed within 24 months, the statute ensures that allocated and unused funds are moved to a jurisdiction where they will be used.  The statute's directive to "reallocate" makes little sense if what is being done is reducing different funds years after the formerly allocated funds were already spent.

      This interpretation is reinforced by another provision in the statute, which states that HUD shall "make any reallocations periodically throughout each fiscal year so as to ensure that all funds to be reallocated are made available to eligible jurisdictions as soon as possible . . ."  42 U.S.C. § 12747.  This indicates that the section 12748(g) reallocations are to occur multiple times each year while funds remain unspent, not years later after allegations that the funds were misspent.

      The meaning of the language in section 12748(g) is further illuminated by comparing it to the language of the other provision that allows for a credit reduction, section 12753.  Rather than referring to a specific reduction of the "expiring funds," section 12753 explicitly calls for a reduction from the fund at large: "HUD shall reduce the funds in the participating jurisdiction's HOME Investment Trust Fund by the amount of any expenditures that were not in accordance with the requirements of this part."  18 U.S.C. § 12753.  Unlike section 12748(g), this language establishes that the reduction should be in "the amount" of the funds misspent, not an expiration of any specific funds.

      Based on the language of these two sections, it is clear that HUD cannot use 12748(g) to remove funds years later for alleged noncompliance.  If it seeks to take such an action, it must use section 12753 and provide a hearing.  HUD argues that this conclusion produces an absurd result and would allow jurisdictions to violate the rules with "impunity."  (ECF No. 18, Def. Opp. at 7.) But HUD can take the same corrective action it attempts to take here—a credit reduction—as long

as it provides a hearing. 18 U.S.C. § 12753. That is the appropriate vehicle for HUD's action, and therefore it acted unlawfully by refusing to provide a hearing.

  B. $408,814 Repayment

In addition to the credit reduction, HUD asked Plaintiff to repay $408,814 to its HOME account based on a finding that certain expenditures made before October 2013 were ineligible and thus disallowed. (Joint App'x 2 at AR 202.)

At a minimum, HUD was required to provide Plaintiff with an opportunity to demonstrate compliance before it requested repayment. HUD argues that its action was permitted by 24 C.F.R. § 92.551, which states that "[i]f HUD determines preliminarily that the [grantee] has not met a requirement of [part 92], the [grantee] will be given notice of this determination and an opportunity to demonstrate, within the time prescribed by HUD . . . that it has done so." 24 C.F.R. § 92.551(b)(1). Here, however, Plaintiff was given neither notice nor an opportunity to demonstrate compliance. Plaintiff was notified for the first time of the alleged violation when the July 24, 2017 letter presented "findings of noncompliance."[1] There was no mention of any opportunity for Plaintiff to demonstrate compliance, nor, as the regulation contemplates, was there a deadline "prescribed by HUD." 24 C.F.R. § 92.551(b)(1). The letter did not cite the regulation under which the action was taken, so Plaintiff was given no notice of the nature of the action and the extent of its rights to demonstrate compliance. Plaintiff did send letters attempting to demonstrate compliance, but HUD's response only further confirms that its first letter was the final determination: the response does not address any of Plaintiff's arguments and simply states that the earlier determinations were final. (Joint App'x 5 at AR 629–632.) HUD thus violated the regulation by failing to provide Plaintiff with an opportunity to demonstrate compliance.

---

[1] Before receiving this letter, Plaintiff responded to numerous requests for more information from HUD, but none of those requests provided notice of noncompliance, as required by the regulation. (Joint App'x 1 at AR 184–193.)

In addition, while 24 C.F.R. § 92.551 allows HUD to ask for repayment on a voluntary basis, it does not allow HUD to order repayment—which is what HUD purported to do here. 24 C.F.R. § 92.55. HUD now argues that repayment was voluntary, but according to the letters HUD sent Plaintiff, the remedial steps were not voluntary. (Def. MSJ at 19.) The letters "issue[d] findings of noncompliance" and "require[d] corrective action including the repayment of HOME funds." (Joint App'x 1 at AR 199.) A section of the letter is titled "Required Corrective Action," and orders Plaintiff to "repay 408,814 to its local HOME program account." (*Id.* at AR 202.) Finally, the letter makes future progress on HOME funding contingent on the repayment of the funds. (*Id.* at 203.) Thus, to the extent Plaintiff was ordered rather than asked to make the repayment, HUD exceeded its authority under 24 C.F.R. § 92.551.

Because HUD did not abide by the requirements of 24 C.F.R. § 92.551, remand is necessary for Plaintiff to attain the process that is due.

## IV.    CONCLUSION

The HOME Act provides HUD with multiple tools for regulating participant compliance, each requiring some form of due process. Here, HUD took two actions against Plaintiff and in both instances failed to provide the required process. Consequently, those actions will be vacated, summary judgment will be denied for Defendant, granted in part and denied in part for Plaintiff, and the matter will be remanded to HUD for adequate adjudication consistent with this opinion.

A corresponding order will be issued simultaneously.

Date: May 29, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

7